IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ARTIS CRUM, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) Civil Action File |
| | ) No. _____ |
| vs. | ) |
| | ) |
| JACOBS ENGINEERING GROUP, INC. | ) |
| | ) |
|     Defendant. | ) **JURY TRIAL DEMANDED** |
| | ) |

## COMPLAINT

COMES NOW Plaintiff Mr. Artis Crum (hereinafter, "Mr. Crum" or "Plaintiff") submits this Complaint against the above-captioned Defendant, Jacobs Engineering Group, Inc. (hereinafter "employer" or "Defendant") based on the following allegations:

### INTRODUCTION

1. This is an action for employment discrimination and monetary relief brought under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991 (hereinafter "Title VII"), 42 U.S.C. § 1981 (hereinafter "Section 1981"), and the Age Discrimination in Employment Act of 1967 (hereinafter "ADEA"). Through this action, Plaintiff seeks redress of unlawful actions

directed towards him during his employment by the Defendant and as a result of Defendant's decision to terminate his employment. Through this action, Plaintiff also seeks restitution under the laws of the United States for losses he suffered as a direct and proximate result of Defendant's actions.

2. This is a proceeding for a declaratory judgment as to Plaintiff's rights and for a permanent injunction enjoining Defendant from maintaining policies and practices of discriminating against Plaintiff and other employees similarly situated on the basis of age, and race, and/or to enjoin the Defendant from retaliating against the Plaintiff for complaining about discriminatory treatment. This action also seeks restitution to Plaintiff of all rights, privileges, benefits, and income that would have been received by him but for Defendant's unlawful and discriminatory practices.

3. Among other relief sought, this action seeks back pay, benefits, insurance costs, bonuses, raises, training, promotions, seniority, liquidated damages, reinstatement or front pay in lieu thereof, compensatory damages, and attorneys' fees and costs.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this dispute.
5. This Court has jurisdiction over the Defendant.

6. Venue is proper in this Court because the Defendant is located within this district and the violations alleged herein were committed within the Northern District of Georgia.

## PARTIES

7. Plaintiff is an African American male citizen who was sixty-three years of age at the time of the events that give rise to the instant Complaint.

8. Plaintiff is a resident of the State of Georgia, citizen of the United States, and he submits himself to the jurisdiction of this Court.

9. Defendant is a global corporation that offers professional services including consulting, technical, scientific and project delivery for the government and private sector.

10. Defendant conducts business in the State of Georgia.

11. Defendant is subject to jurisdiction in the Northern District of Georgia.

12. Defendant is an employer within the meaning of Title VII and the ADEA.

13. Defendant is a "person" subject to liability under 42 USC § 1981.

14. Defendant may be served with process by delivering a copy of the Summons and Complaint to Defendant's registered agent at CT Corporation System, 289 S Culver Street, Lawrenceville, Georgia 30046-4805.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

15. Plaintiff filed charges of discrimination with the appropriate agency within 180 days of the occurrence of the adverse employment actions of which he complains.

16. Plaintiff has exhausted all administrative prerequisites prior to filing this action.

17. Specifically, Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (hereinafter "EEOC"), raising his claims for violation of Title VII and the ADEA.  Plaintiff timely filed an Amended Charge of Discrimination with the EEOC.  The EEOC investigated Plaintiff's Charge(s) and ultimately, issued a Notice of Right to Sue on or around August 24, 2023.  Plaintiff brings this action within ninety (90) days of his receipt of his Notice of Right to Sue.

## FACTS

18. Defendant is a corporation that employs an excess of 500 employees.

19. On December 15, 2010, Defendant hired Plaintiff as an Electrical Lead.

20. On or around October 1, 2021, Defendant promoted Plaintiff to Shift Supervisor.

21. As Shift Supervisor, Plaintiff supervised 19 skilled trade technicians, including but not limited to, an employee by the name of Veronica Stewart ("Ms. Stewart").

22. As Shift Supervisor, Plaintiff was responsible for disciplining his subordinates for infractions including but not limited to, employee misconduct, attendance infractions, performance issues, and other violations of Defendant's policies.

23. On March 9, 2022, Ms. Stewart overslept and missed her pre-scheduled appointment to upgrade her badge for the Black Custom Seal. Ms. Stewart's misconduct was considered an attendance infraction.

24. As a result of missing her pre-scheduled appointment, Ms. Stewart failed to obtain the proper badge and therefore, could not perform her job duties. Consequently, Plaintiff had to assign another employee to fill in for Ms. Stewart.

25. Ms. Stewart's conduct on March 9, 2022, violated Defendant's Attendance Management Policy, POL 002, which required Ms. Stewart to arrive on time for all appointments that were necessary for her to qualify for and perform her job duties.

26. On or around March 15, 2022, Project Manager, Van McNeil ("Mr. McNeil"), instructed Plaintiff to issue a write-up to Ms. Stewart for missing her appointment to upgrade her badge.

27. On or around March 19, 2022, per Mr. McNeil's request, Plaintiff drafted a record of corrective action to document that a verbal warning was given to Ms. Stewart based on her attendance infraction on March 9, 2022.

28. On March 21, 2022, Operations Manager Hulon Motley ("Mr. Motley") revised the draft record of corrective action.

29. On March 23, 2022, Plaintiff sent the draft record of corrective action to Human Resources Consultant Stephanie Zepeda ("Ms. Zepeda") for further approval.

30. On March 25, 2023, Ms. Zepeda approved the verbal warning Plaintiff proposed for issuance to Ms. Stewart for missing her pre-scheduled appointment to upgrade her badge.

31. Ms. Zepeda asked Plaintiff to have Ms. Stewart sign the corrective action so that a copy could be placed in Ms. Stewart's personnel file.

32. In an email dated, April 2, 2022, Plaintiff told Ms. Zepeda that he made several attempts to present the verbal warning to Ms. Stewart for her signature.

33. Plaintiff further told Ms. Zepeda that after meeting with Ms. Stewart the morning of April 2, 2022, Ms. Stewart acknowledged to Plaintiff that she had overslept.  However, Ms. Stewart still refused to sign the corrective action.

34. Ms. Stewart became very upset about the corrective action—so much so that she complained about it to Mandy Harris-Troup ("Ms. Harris-Troup"), the HVAC Superintendent.

35. Ms. Harris-Troup told Administrative Assistant, Michelle Spreuer ("Ms. Spreuer"), that Ms. Stewart was upset about the corrective action Plaintiff issued to her.

36. Ms. Harris-Troup and Ms. Spreuer then met with Mr. McNeil concerning the fact that Ms. Stewart was upset about the corrective action Plaintiff issued to her.

37. Upon information and belief, when Ms. Harris-Troup and Ms. Spreuer met with Mr. McNeil, they accused Plaintiff of sexually harassing Ms. Stewart.

38. Weeks later on April 27, 2022, Human Resources Director, Britney Atkins ("Ms. Atkins") called Plaintiff to interview him concerning the corrective action that was issued to Ms. Stewart.

39. On or about April 27, 2022, Plaintiff complained on his own behalf and on behalf of older African American men, about being harassed on the job on the basis of their race and age.

40. Specifically, Plaintiff expressed his beliefs that African American men over the age of forty were routinely harassed, issued phony write-ups, fired, and passed over for promotions by Defendant on the basis of their race and age.

41. Approximately thirteen (13) days later, on May 10, 2022, Mr. McNeil called Plaintiff and told him not to report to work that evening.

42. During their call, Mr. McNeil told Plaintiff that a complaint was filed against him, an investigation was being conducted, and while the investigation remained pending, he was not to report to work.  Mr. McNeil never told Plaintiff the reason a complaint was filed against him or why he was not to report back to work.

43. On May 27, 2022, Plaintiff met with Human Resources personnel, Brittany Atkins ("Ms. Atkins"), and told her about his concerns of wrongful termination and what he reasonably believed to be discriminatory animus against African American male employees over the age of forty.

44. Plaintiff attempted to defend himself against the sexual harassment allegations; however, his response to the allegations and his concerns about the quality and impartiality of the investigation were disregarded.

45. Plaintiff told Ms. Atkins that he believed the investigation was biased and the allegations against him were not properly investigated.

46. Plaintiff told Ms. Atkins that the investigation was sloppy similar to past investigations that led to the firing of other African American male employees who were also over the age of forty.

47. Plaintiff also told Ms. Atkins that younger white male employees were treated more favorably because their concerns were taken more seriously by management and Human Resources compared to the complaints of discrimination and harassment that were raised by older African American male employees.

48. As an example of the more favorable treatment Defendant showed younger white male employees, Plaintiff told Ms. Atkins that in 2018, a white male employee in his thirties—specifically, Facilities Superintendent, Lance Kitchen—was not fired after asking a female employee (Jasmine Inu), "Who's taking you home tonight?" and being slapped by her in response.

49. Twenty one (21) days later, on June 17, 2022, Defendant terminated Plaintiff's employment effective immediately.

50. By letter dated June 17, 2022, Defendant informed Plaintiff that his employment with Jacobs Engineering Group, Inc., was being terminated because Defendant received a complaint of sexual harassment involving him, accusing Plaintiff of making offensive and/or derogatory comments in the workplace.

51. By letter dated June 17, 2022, Defendant informed Plaintiff that his employment was being terminated because Defendant allegedly found evidence supporting an employee's allegations that Plaintiff had inappropriate physical contact with other employees.

52. By letter dated June 17, 2022, Defendant further stated it was firing Plaintiff due to alleged violation of its "No Harassment, Discrimination, Bullying and Violence Policy."

53. Defendant made its decision to terminate Plaintiff's employment after Plaintiff asserted his complaints of race and age based discrimination and harassment.

54. Defendant did not investigate Plaintiff's complaints of discrimination and harassment prior to terminating his employment.

55. Plaintiff had an excellent performance record throughout the course of his employment with Defendant.

56. Plaintiff did not sexually harass Ms. Stewart.

57. Defendant did not have a good faith-based reason for believing Plaintiff sexually harassed Ms. Stewart.

58. Defendant did not have a good faith-based reason for believing Plaintiff sexually harassed any female employee.

59. Plaintiff did not engage in any conduct that violated Defendant's workplace policies.

60. Defendant did not have a good faith-based reason for believing Plaintiff engaged in conduct that violated Defendant's workplace policies.

61. Defendant did not have a good faith-based reason for believing Plaintiff engaged in any offensive, derogatory, and/or inappropriate conduct at any time during the course of his twelve (12) years of employment.

62. Defendant did not have a good faith-based reason for believing Plaintiff engaged in conduct that amounted to a terminable offense.

63. Plaintiff reasonably believed that Defendant disregarded his concerns in response to Ms. Stewart's allegations of misconduct against him and did so on the basis of his race and age.

64. As a result of Defendant's past favorable treatment of younger white male employees, Plaintiff reasonably believed he was fired on the basis of his race, age, and protected activity.

65. The reasons Defendant cited for firing Plaintiff were a false pretense to mask unlawful discrimination.

66. On December 13, 2022, Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission against Defendant alleging discrimination and harassment on the basis of his race and age.

67. Plaintiff has been harmed as a result of Defendant's decision to terminate his employment.

68. By taking the actions described herein on the basis of Plaintiff's race, age, and protected activity, Defendant has acted intentionally, willfully, and in bad faith.

69. Defendant's actions toward Plaintiff as complained of herein were based on his race in violation of Plaintiff's rights under Title VII and Section 1981.

70. Defendant's actions complained of herein were based on Plaintiff's age in violation of Plaintiff's rights under the ADEA.

71. The Defendant's above-stated and similar acts were taken in retaliation for Plaintiff having exercised his rights under Title VII, Section 1981, and the ADEA.

72. Defendant's actions were willful, deliberate, and intended to cause Plaintiff harm and/or were committed with reckless disregard of the harm caused to Plaintiff, in derogation of his federally protected rights under the law.

73. Plaintiff is entitled to actual damages for Defendant's violations of the ADEA, Title VII, and Section 1981.

74. Plaintiff has suffered and will continue to suffer emotional distress, mental anguish, and physical harms as a result of Defendant's actions.

75. Plaintiff is entitled to compensatory damages for Defendant's violations of Title VII and Section 1981.

76. Plaintiff is entitled to liquidated damages for Defendant's violations of the ADEA.

77. Plaintiff is entitled to punitive damages for Defendant's violations of Title VII and Section 1981.

78. Plaintiff is entitled to both equitable and monetary relief for Defendant's violations of the law.

## COUNT ONE

## RETALIATION IN VIOLATION OF TITLE VII, SECTION 1981, AND THE ADEA

79. Plaintiff restates and incorporates by reference the preceding Paragraphs of this Complaint.

80. Defendant's conduct in firing Plaintiff on account of his protected activity violates Title VII, Section 1981, and the ADEA, as protected activity is defined under each respective act.

81. As a direct and proximate result of Defendant's acts of intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job related benefits.

82. In addition, Defendant's actions have caused, continue to cause and will cause Plaintiff to suffer damages for emotional distress, mental anguish and other non-pecuniary losses.

## COUNT TWO

## RACE DISCRIMINATION IN VIOLATION OF TITLE VII

83. Plaintiff restates and incorporates by reference the preceding Paragraphs of this Complaint.

84. As a direct and proximate result of Defendant's acts of intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job related benefits.

85. In addition, Defendant's actions have caused, continue to cause and will cause Plaintiff to suffer damages for emotional distress, mental anguish and other non-pecuniary losses.

## COUNT THREE

### RACE DISCRIMINATION IN VIOLATION OF TITLE VII & SECTION 1981

86. Plaintiff restates and incorporates by reference the preceding Paragraphs of this Complaint.

87. As a direct and proximate result of Defendant's acts of intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job related benefits.

88. In addition, Defendant's actions have caused, continue to cause and will cause Plaintiff to suffer damages for emotional distress, mental anguish and other non-pecuniary losses.

## COUNT FOUR

## DISCRIMINATION IN VIOLATION OF THE ADEA

89. Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

90. Plaintiff's age actually motivated Defendant's decision to terminate his employment.

91. Defendant's conduct in firing Plaintiff on account of his age violates the Age Discrimination in Employment Act.

92. As a direct and proximate result of Defendant's acts of intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job related benefits.

93. In addition, Defendant's actions have caused, continue to cause and will cause Plaintiff to suffer damages for emotional distress, mental anguish and other non-pecuniary losses.

## COUNT FIVE

## UNLAWFUL HARASSMENT IN VIOLATION OF TITLE VII, SECTION 1981, AND THE ADEA

94. Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

95. The Defendant and its agents acted to create and maintain a hostile work environment for the Plaintiff because of his race, age, and protected activity by retracting its support of his decision to discipline Ms. Stewart, dismissing and disregarding his complaint of discrimination based on race and age by not conducting an investigation, and ultimately terminating his employment.

96. As a direct and proximate result of Defendant's unlawful harassment of Plaintiff on the basis of his race, age, and protected activity, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job related benefits.

97. In addition, Defendant's actions have caused, continue to cause and will cause Plaintiff to suffer damages for emotional distress, mental anguish and other non-pecuniary losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

1. Issue declaratory judgment that Defendant's acts, policies, practices, and procedures complained of herein violated Plaintiff's right to be free from race discrimination, age discrimination, and retaliation as secured under Title VII and Section 1981 and further violated the ADEA;

2. Grant Plaintiff a permanent injunction enjoining the Defendant, its officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment practice or policy which discriminates against the Plaintiff and others similarly situated because of their race, age, and protected activity;

3. Grant Plaintiff a permanent injunction enjoining the Defendant, its officers, agents, successors, employees, attorneys, and those acting in concert with them, from taking any action against him in retaliation for his exercising his rights under Title VII, Section 1981, and/or the ADEA;

4. Order the Defendant to compensate, reimburse, and make whole the Plaintiff for all the benefits he would have received had it not been for Defendant's illegal actions, including but not limited to back pay, benefits, insurance costs, bonuses, raises, training, promotions, seniority, reimbursement for lost pension and retirement benefits, social security, liquidated damages, and other benefits and expenses in an amount to be proven at trial.  Plaintiff should be accorded these illegally withheld benefits from the date Plaintiff was discharged until the date Defendant tenders substantially equivalent employment, with pre-judgment and post-judgment interest on the above withheld amounts to the date of payment;

5. Grant to Plaintiff compensatory damages in an amount reasonable and commensurate with the losses imposed upon him by the Defendant's unlawful and discriminatory acts and retaliation, including his pain and emotional distress;

6. Grant to Plaintiff a jury trial on all issues so triable;

7. Grant to Plaintiff a reasonable attorneys' fee and reasonable expert witness fees together with any and all other costs and expenses of litigation associated with this action as provided by law; and

8. Grant such additional relief as the Court deems proper and just.

This 22nd day of November, 2023.

THE WILSON FIRM, LLC

By:   \_/s/ *David A. Wilson*\_\_
     David A. Wilson
     Georgia Bar No. 233195

12461 Veterans Memorial Hwy, Suite 580
Douglasville, Georgia 30134
DA@wilsonfirmatlanta.com
(470) 223-8271

**ATTORNEY FOR PLAINTIFF**